COBB, Judge.
The issue on this appeal is whether or not the trial court erred in dismissing with prejudice the second amended complaint of the appellant, Cross County Realty, Inc., the plaintiff below.
The third count deals with general allegations that the defendants tortiously interfered with unspecified contracts between plaintiff and the defendant Amacker, and properly was dismissed. The second count, in our view, properly was dismissed because the alleged interference was done by parties who could not be considered third parties to the contract. See Doyal v. School Board of Liberty County, 415 So.2d 791 (Fla. 1st DCA 1982) and West v. Troelstrup, 367 So.2d 253 (Fla. 1st DCA 1979).
The first count, set out below,[1] does state a cause of action for breach of con *992 tract. Presumably, Errol Estate Realty Company and Singleton could be added as parties to that count. The dismissal of Count I is
REVERSED.
DAUKSCH, J., concurs.
COWART, J., dissents.

.PLAINTIFF’S SECOND AMENDED COMPLAINT
COMES NOW the Plaintiff, CROSS-COUNTY REALTY, INC., a Florida Corporation, by and through its undersigned attorneys, and sues the Defendants, CHARLES S. AMACKER, THE ERROL ESTATE REALTY COMPANY, WILLIAM B. SINGLETON, and JAMES L. SUMMERS, jointly and severally, and alleges:
1. The Plaintiff, CROSS-COUNTY REALTY, INC., hereinafter referred to “CROSS-COUNTY,” is a Florida Corporation with its principal place of business in Altamonte Springs, Seminole County, Florida.
2. The Defendant, CHARLES S. AMACKER, hereinafter referred to as “AMACKER,” is a resident of Seminole County, Florida, and is sui juris.
3. The Defendant, THE ERROL ESTATE REALTY COMPANY, hereinafter referred to as “ERROL ESTATE,” is a Florida Corporation with its principal place of business in Apopka, Orange County, Florida. At all times material hereto, ERROL ESTATE was a member of the Orlando — Winter Park Board of Realtors. As a member of the Orlando — Winter Park Board of Realtors, and Multiple Listing Service, the Defendant, ERROL ESTATE had subscribed or agreed to a code of ethics which among other things required ERROL ESTATES and its employees, agents, or brokers to submit all offers from prospective purchasers directly to the listing office, in this case to the Plaintiff. Notwithstanding this obligation ERROL ESTATES and SINGLETON did intentionally violate its code of ethics and violated its duty to Plaintiff by refusing to forward SUMMER’S offers to Plaintiff and by intentionally going directly to AMACKER with SUMMER’S offer in violation of its duty to not communicate directly with the seller but only through the listing office, to wit: the Plaintiff.
4. The Defendant, WILLIAM B. SINGLETON, hereinafter referred to as “SINGLETON,” is a resident of Orange County, Florida, and is sui juris.
5. The Defendant, JAMES L. SUMMERS, hereinafter referred to as “SUMMERS,” is a resident of Orange County, Florida, and is sui juris.
COUNT I
The Plaintiff, CROSS-COUNTY REALTY, INC., sues the Defendant, CHARLES S. AMACKER, and alleges:
6. On or about October 17, 1979, the Plaintiff, CROSS-COUNTY, and the . Defendant, *991 AMACKER, entered into an Exclusive Right of Sale Contract, whereby the Defendant gave the Plaintiff an exclusive right to sell a condominium unit owned by the Defendant under a Contract for Sale and Purchase with JACK I. HICKMAN described as:
Unit “A”, Building “F”, LAKE FRANCIS VILLAGE II, Apopka, Florida, for a period of four (4) months. A true and correct copy of said Exclusive Right of Sale Contract is attached hereto as Plaintiffs Exhibit “A” and incorporated herein by reference as if herein fully set forth. All Defendants were aware of this contract at all times material.
7. Pursuant to the terms of the Exclusive Right of Sale Contract, the Plaintiff did process the above property through the Orlando-Winter Park Multiple Listing Service, Inc. and did otherwise advertise the above-described property and did otherwise comply with its obligations under paragraph 3 of the Exclusive Right of Sale Contract.
8. Paragraph 5 of the Exclusive Right of Sale Contract provided, among other things:
“5. In further consideration of this Exclusive Right and Power of Sale, Owners, jointly and severally, agree to pay to the REALTOR a commission of 5% of the sales price for said property, upon the occurrence of any of the following circumstances: ... (c) In the event that within 90 days after the termination of this Exclusive Right of Sale Contract, the Owners without employing another broker, agree to sell the property to a purchaser to whom the property was submitted by the REALTOR, any cooperating broker, or Owner before the date of termination ...”
9. On or about January 14, 1980, the Defendant, ERROL ESTATE, did obtain from the Defendant, SUMMERS, a Contract for Sale and Purchase of the aforedescribed condominium upon the terms stated therein. A true and correct copy of that Contract for Sale and Purchase executed by the Defendant, SUMMERS, on the 14th day of January, 1980, is attached hereto as Plaintiff’s Composite Exhibit “B” and incorporated herein by reference. Said Contract for Sale and Purchase from the Defendant, SUMMERS, was for the total purchase price of SEVENTY-SEVEN THOUSAND AND NO/100 ($77,000.00) DOLLARS.
10. The Defendant, ERROL ESTATE, did receive from the Defendant, SUMMERS, a deposit of FIVE HUNDRED AND NO/100 ($500.00) DOLLARS pursuant to the aforesaid Contract for Sale and Purchase. A true and correct copy of the check tendered to ERROL ESTATE by the Defendant, SUMMERS, is attached hereto as Plaintiffs Exhibit “C” and incorporated herein by reference.
11. Subsequent to January 14, 1980, but pri- or to February 17, 1980, the Plaintiff was informed by Defendant, AMACKER, that he was contacted directly by ERROL ESTATE and that he had in fact received the aforesaid offer from Defendant, SUMMERS.
12. Upon gaining that knowledge, CROSS-COUNTY contacted the Defendant, ERROL ESTATE, and asked said Defendant to transmit the offer through its office so that it may submit the same to the owner for his consideration. The Defendant, ERROL ESTATE was required to do this as a co-operating broker. The Defendant, AMACKER, was required to refer all inquiries to Plaintiff pursuant to the exclusive Right of Sale Contract with Plaintiff.
13. After receiving the Contract for Sale and Purchase signed by the Defendant, SUMMERS, from ERROL ESTATE, the Plaintiff was led to believe by said Defendant that there were a number of changes to be made in the offer and said Defendant, therefore, requested the Plaintiff to destroy the aforesaid Contract for Sale and Purchase, and that the offer would be re-submitted. This representation was proven to be false and was made as part of a conspiracy by the Defendants to deprive Plaintiff of a commission.
14. After numerous telephone calls by the Plaintiff or the Plaintiffs agents to the Defendant, ERROL ESTATE, the Plaintiff was informed by the Defendant, ERROL ESTATE, that no new offer would be submitted, although said Defendant knew that SUMMERS and AMACKER had in fact agreed to continue to negotiate the sale and purchase of the condominium.
15. Subsequent to February 17, 1980, the Plaintiff did learn from an agent or employee of ERROL ESTATE that the Defendant, SUMMERS, and the Defendant, AMACKER, did in fact enter into a contract for AMACKER to sell and for SUMMERS to purchase the contract AMACKER had with JACK I. HICKMAN by the way of an assignment of the aforedescribed condominium unit within days after February 17, 1980, upon terms substantially similar to the Contract for Sale and Purchase executed by SUMMERS on January 14, 1980.
16. Attached hereto as Exhibit “D” and made a part hereof is the Exclusive Right of Sale Agreement entered into for the above condominium unit between the Defendant AMACHER and the Defendants ERROL ESTATE and WILLIAM SINGLETON dated February 18, 1980, the day immediately following the technical expiration of Plaintiffs Exclusive Right of Sale Agreement. The entering into the Agreement attached hereto as Exhibit “D” was not necessary and was a bad faith attempt to defeat the Plaintiff of its commission by attempting to use the provision in Plaintiffs listing agreement allowing the Defendant AMACKER to employ another broker to sell the property if done within 90 days of February 17, 1980. Plaintiff alleges that this Exhibit “D” is a fabricated document entered into after the fact. Said Exclusive Right of Sale Contract between AMACKER and ERROL ESTATE was never submitted to the Orlando-Winter Park *992 Multiple Listing Service as required under the bylaws of said organization, which bylaws Defendants, ERROL ESTATE and SINGLETON agreed to be bound as members of said organization. A copy of the Bylaws is attached as Exh. “H”.
17. On or about May 7, 1980, the Defendant, AMACKER, did in fact close a sale of the above-described condominium unit to the Defendant, SUMMERS in the office of Mid-Florida Title Insurance Company, Inc., Altamonte Springs, Seminole County, Florida. The purchase price was SEVENTY-SEVEN THOUSAND AND NO/100 ($77,000.00) DOLLARS. A true and correct copy of the recorded deed going from JACK I. HICKMAN to the Defendant, SUMMERS, as recorded in the Public Records of Orange County, Florida, is attached hereto as Plaintiff’s Exhibit “E” and incorporated herein by reference.
18. A true and correct copy of the contract entered into for the sale and purchase of the above-described condominium unit by the Defendant, AMACKER, and the Defendant SUMMERS, is attached hereto as Exhibit “F” and incorporated herein by reference. Said contract shows that the Defendants ERROL ESTATE and SINGLETON received the deposit on January 12, 1980, a date when the Plaintiffs Exclusive Right of Sale Agreement was in full force and effect. The Defendants has conspired to close the subject transaction without a written contract in an attempt to defeat and defraud Plaintiff of its lawfully earned commission. The Defendant, AMACKER breached the Exclusive Right of Sale Agreement by wilfully, intentionally and in bad faith negotiating with SUMMERS directly or with ERROL ESTATE or SINGLETON rather than refering all inquiries to Plaintiff as required by the exclusive Right of Sale Agreement.
19. Prior to the actual closing, the Plaintiff did cause to be sent to the Defendant, AMACKER, its letter dated February 28, 1980, requesting payment of 5% of the purchase price pursuant to the Exclusive Right of Sale Contract when it confirmed Defendants conspiracy to deprive it of its rightful commission. A true and correct copy of the February 28,1980 letter to AMACKER from the Plaintiff is attached hereto as Plaintiffs Exhibit “G” and incorporated herein by reference.
20. Notwithstanding the demands of the Plaintiff, the Defendant, AMACKER, has refused to pay the Plaintiff its commission due in the amount of THREE THOUSAND EIGHT HUNDRED FIFTY AND NO/100 ($3,850.00) DOLLARS.
21. The Plaintiff has complied with all of the terms and conditions of the Exclusive Right of Sale Contract attached hereto as Plaintiff’s Exhibit “A” and has otherwise fully complied with all conditions of contract or law entitling it to bring this action while the Defendant has fraudulently deprived Plaintiff of its lawful commission.
22. The closing on the above-described condominium unit occurred within 90 days of February 17, 1980, to wit: on May 7, 1980 the 80th day after February 17, 1980 and under circumstances such that it was not necessary for AMACKER to employ another broker since the closing was upon substantially similar terms to the terms of the January 14, 1980 contract offer by Defendant SUMMERS, and under such facts and circumstances as alleged to show that the employment of another broker was in bad faith and was a fraudulent attempt to defeat and deprive the Plaintiff of its lawful commission.
WHEREFORE, the Plaintiff, CROSS-COUNTY REALTY, INC., sues the Defendant, CHARLES S. AMACKER, for compensatory damages and punitive damages, attorneys fees, interest, and costs and demands trial by jury of all issues as of right triable by jury.